IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THERESA WATKINS, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:11-cv-260-M-BN |
| | § | |
| CORNELL COMPANIES, INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Cornell Companies, Inc. ("Defendant" or "Cornell") seeks summary judgment against Plaintiffs Theresa Watkins, Brittany O. Davis, LeeAnn N. Maestas, Amanda Roller, Cheryl Pressley, Lauren K. Graham, Jennifer Nicole Gardner, Lauren K. Daggs, Kelly Armstrong, Cynthia Hilton, Lisa Pelmore, Tracie Alexander, Christopher Pinson, Nicole Wright, and Ginny Eichman (collectively, "Plaintiffs") on each of the causes of action asserted in Plaintiffs' Original Petition. *See* Defendant Cornell Companies, Inc.'s Motion for Summary Judgment [Dkt. No. 42]. The District Court has referred this case to the undersigned magistrate judge for pretrial management, including recommendation on dispositive motions. *See* Dkt. No. 8.[1] The

---

[1] This action was originally referred to United States Magistrate Judge Jeff Kaplan. Effective November 21, 2012, this civil case was reassigned to the undersigned United States Magistrate Judge David L. Horan pursuant to Special Order 3-290.

undersigned magistrate judge recommends that Defendant's Motion for Summary Judgment [Dkt. No. 42] be granted in its entirety.[2]

## Background

This is a action brought by former clients of the Wilmer Treatment Center, a facility at which Defendant provided substance abuse treatment services to felony probationers, alleging that Defendant violated Plaintiffs' rights and committed certain torts by disclosing Plaintiffs' private information. Specifically, Plaintiffs allege that Defendant committed negligence per se for violations of certain provisions of the Texas Administrative Code that impose confidentiality requirements on licensed providers of drug abuse treatment services; violated Plaintiffs' right to privacy under the United States Constitution; and committed invasion of privacy torts under Texas common law. Plaintiffs seek damages for actual damages, punitive damages, and attorneys' fees. *See* Dkt. No. 1-1.

Defendant is a private company serving as an independent contractor for Dallas County to provide substance abuse treatment, medical, vocational, and rehabilitative services for adult felony probationers at the Wilmer Treatment Facility. Plaintiffs' allegations are based on assertions that Defendant's employees filmed Plaintiffs in violation of Defendant's confidentiality policies as well as federal and state law.

---

[2] While the undersigned has reviewed Defendant's Objections [Dkt. No. 54], it is not necessary to rule on those objections in light of the fact that, even with full consideration of Plaintiffs' summary judgment response and supporting documents, Plaintiffs have failed to raise a triable issue of fact.

Plaintiffs allege two particular instances of prohibited filming. First, Plaintiffs allege that Defendant's employees filmed "the daily activity of the treatment center ... showing the workings of the center and the daily life of patients," from which Defendant's employees created a "promotional DVD" (the "CRB Video"). Plaintiffs allege that the CRB Video was shown to numerous groups and individuals to raise money for the treatment program and to obtain future contracts. *See* Dkt. No. 1-1 at ¶¶ 10, 13. Plaintiffs also allege that Defendant's employees filmed clients participating in a singing competition show called Cornell Idol, which was modeled after the television program *American Idol* (the "Cornell Idol Footage"). *See id.* at ¶ 10. Plaintiffs do not make any allegations regarding whether Defendant showed the Cornell Idol Footage outside of the treatment facility.[3]

Defendant admits that its employees filmed clients in connection with both the

---

[3] In their Response, Plaintiffs discuss additional filming and photography of Plaintiffs by Defendant's employees. *See* Dkt. No. 51 at 3 & 17 of 30. However, the Court need not consider these additional instances, as they were not plead in the Original Petition. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) ("[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment.") Moreover, Plaintiffs do not allege that any of these additional instances were disclosed, except that certain of them were included in the CRB Video. *See* Dkt. No. 51 at 3 & 17 of 30. Finally, to the extent any of these instances occurred prior to January 4, 2009 and were not incorporated into the CRB Video, claims based on such conduct are barred by the statute of limitations. *See Citizens State Bank of Dickenson v. Shapiro*, 575 S.W.2d 375, 386 (Tex. App. – Tyler 1978, writ ref'd n.r.e.) (two-year statute of limitations for negligence per se claims); *Piotrowski v. City of Houston*, 237 F.3d 567, 575 (5th Cir. 2001) (two-year statute of limitations for 42 U.S.C. § 1983 claims brought in Texas); *Stevenson v. Koutzarov*, 795 S.W.2d 313, 319 (Tex. App. – Hous. [1st Dist.] 1990, writ denied) (two-year statute of limitations for invasion of privacy claims).

CRB Video, *see* Dkt. No. 42 at ¶¶ 23-29, and the Cornell Idol Footage, *see id.* at ¶¶ 41-42, but denies any wrongdoing and raises several affirmative defenses, *see* Dkt. No. 34.

On November 27, 2012, the deadline for filing dispositive motions, Defendant filed its Motion for Summary Judgment in which it argues that Plaintiffs cannot prevail on any of their causes of action as a matter of law because they cannot establish at least one element of each claim. *See* Dkt. No. 42-1. On the deadline for Plaintiffs' Response, Plaintiffs filed their own motion for summary judgment. *See* Dkt. No. 46. Judge Lynn struck Plaintiffs' motion for summary judgment as untimely, *see* Dkt. No. 50, but, in the interest of justice, the undersigned *sua sponte* granted Plaintiffs a one-week extension to respond to Defendant's motion, *see* Dkt. No. 49. Plaintiffs then timely filed their Response.

## Legal Standards

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If, as here, the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the

absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

-5-

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

In connection with its Motion for Summary Judgment, Defendant filed a Statement of Undisputed Facts, *see* Dkt. No. 42 at 5-18, with citations to evidence in an attached Appendix. Plaintiffs did not file a counter-statement of facts or otherwise specifically dispute the facts raised by the Defendant, other than to largely restate the facts set forth in the Original Petition, without citation to evidence. *See* Dkt. No. 51 at ¶¶ 1-8. While the Local Rules in this district do not require the parties to submit statements or counter-statements of undisputed facts, where the Defendant cites a fact that Plaintiffs do not controvert with evidence, the Court may accept it as true. *See Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Bradley v. Chevron U.S.A., Inc.*, No. 204-cv-92-J, 2004 WL 2847463, at *1 n.2 (N.D. Tex. Dec. 10, 2004).

## Analysis

<u>Negligence Per Se</u>

Defendant moves for summary judgement on Plaintiffs' negligence per se claim on the grounds that the statutes on which Plaintiffs rely are not penal in nature and that there is no evidence that the alleged conduct by Defendant proximately caused Plaintiffs' injuries. Because the undersigned concludes that none of the statutes on which Plaintiffs rely – either in their Original Petition or improperly added to their Response – are penal in nature and therefore satisfy the requirements of negligence per se, the undersigned need not address Defendant's argument on proximate cause.

Negligence per se is a common law doctrine whereby the courts establish the duty of care owed to third parties by reference to "a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex.1997). To prevail on a claim of negligence per se, a party must also establish that the violative conduct was the proximate cause of that party's injuries. *See Ambrosio v. Carter's Shooting Ctr.*, 20 S.W.3d 262, 265 (Tex. App. – Hous. [14th Dist.] 2000, pet denied). "A violation of a non-penal administrative code statute does not establish a negligence per se claim." *Ridgecrest Retirement & Healthcare v. Urban*, 135 S.W.3d 757, 762 (Tex. App. – Hous. [1st Dist.] 2004, pet. denied). "A penal statute is one that defines a criminal offense and specifies a corresponding fine, penalty or punishment." *Pack v Crossroads, Inc.*, 53 S.W.3d 492, 509-10 (Tex. App. – Ft. Worth 2001, pet. denied).

In the Original Petition, Plaintiffs premise their negligence per se claim on sections 448.210, 448.701, and 448.802 of title 25 of the Texas Administrative Code and § 290dd-2 of Title 42 of the United States Code. *See* Dkt. No. 1-1 at ¶ 18. In their Response, Plaintiffs concede that 42 U.S.C. § 290dd-2 does not apply to Defendant and instead rely on title 25, sections 448.201 and 448.210 of the Texas Administrative Code and title 2, section 81.103 of the Texas Health & Safety Code. *See* Dkt. No. 51 at 4 & 8 of 30.

The undersigned need not address section 448.201 of the Texas Administrative Code and section 81.103 of the Texas Health & Safety Code because Plaintiffs failed to allege negligence per se under these statutes in their Original Petition. *See De Franceschi*, 477 F. App'x at 204 ("[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment."). Nevertheless, even considering these statutes, Plaintiffs cannot state a claim for negligence per se.

All of the Texas Administrative Code sections on which Plaintiffs rely are within chapter 448 of title 25. The penalties for enforcement of chapter 448 are civil remedies, ranging from license revocation or suspension to administrative penalties. *See* 25 TEX. ADMIN. CODE § 448.409. As such, none of the sections in chapter 448 are penal in nature, and therefore none can serve as the basis of a negligence per se claim. *See Ridgecrest*, 135 S.W.3d at 762-63; *Pack*, 53 S.W.3d at 509-510; *Mann v. Geriatric Services, Inc.*, No. 4-4-649-cv, 2005 WL 3445987, at *6 (Tex. App. – San Antonio 2006, no pet.). Indeed, Plaintiffs appear to argue that the statutes they rely on from the

Texas Administrative Code are not penal. *See* Dkt. No. 51 at 12 of 30 ("[Section] 448.210 ... can in no way be classified as a penal offense in that it is (1) not found in the Texas Penal Code, and (2) provides for no criminal penalties.").

Plaintiffs rely on *Butler v. Texas*, No. 14-00-1186-cr, 2003 WL 253296 (Tex. App. – Hous. [14th Dist.] Feb. 6, 2003, no pet.), an unpublished criminal case, for the proposition that "a breach of confidentiality is punishable only by a civil lawsuit against the treatment facility." Dkt. No. 51 at 12 of 30. But *Butler* is simply not applicable to the question of whether sections under Chapter 448 of the Texas Administrative Code can for the basis of a negligence per se claim.

Plaintiffs' citation to section 81.103 of the Texas Health & Safety Code – though, as it is not plead in the Original Petition, it need not even be considered – is likewise inapposite. Although this statute does impose a criminal penalty for violations, it applies only to the disclosure of HIV test results. *See* 2 TEX. HEALTH & SAFETY CODE § 81.103; *see also* Dkt. No. 51 at 11 of 30 (acknowledging that Section 81.103 imposes criminal penalties "only as it relates to a[sic] HIV test result"). Plaintiffs included no allegations in their Original Petition that Defendant disclosed Plaintiffs' HIV or other test results. This statute is wholly inapplicable to this action and cannot serve as the basis of Plaintiffs' negligence per se claim.

Because the statutes on which Plaintiffs rely cannot form the basis for a negligence per se claim, summary judgment is proper. *See Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 93 (Tex. App. – Hous. [1st Dist.] 2003, no pet.).

<u>Constitutional Privacy Violations</u>

Plaintiffs assert that the United States Constitution provides individuals with a right to privacy and that they may sue for an invasion of that privacy. Plaintiffs rely solely on two cases – *Griswold v. Connecticut*, 381 U.S. 479 (1965), and *Roe v. Wade*, 410 U.S. 113 (1973) – as the basis for their claim. *See* Dkt. No. 51 at 7 of 30.

Plaintiffs purport to sue directly under the Due Process Clause of the Fourteenth Amendment. The Fifth Circuit has "long harbored a great reluctance to allow the pursuit of constitutional causes of action directly," noting that "[e]ven the most cursory reading of our case law demonstrates beyond cavil that we have permitted prosecution of such actions directly under the Constitution <u>only</u> when necessitated by a total absence of alternative courses and no other means existed to seek redress for flagrant violations of the plaintiff's constitutional rights." *Mitchell v. City of Houston*, 57 F. App'x 211, 211 (5th Cir. 2003); *see also Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381, 382-83 (5th Cir. 1980). When a statutory mechanism is available, plaintiffs must invoke its protection. *See Mitchell*, 57 F. App'x at 211.

In this case, 42 U.S.C. § 1983 provides such a mechanism, and Plaintiffs must proceed thereunder. Although Plaintiffs premise their claim under *Griswold* and *Wade* – neither of which proceeded under Section 1983 – *Griswold* and *Wade* do not provide a basis for the relief sought by Plaintiffs. *Griswold* concerned a challenge by doctors to the constitutionality of a state statute under which they had been convicted for prescribing contraceptive material, *see* 381 U.S. 479, and *Roe* sought declaratory and injunctive relief respecting the constitutionality of state criminal abortion laws, *see* 410

U.S. 113. Here, the type of relief sought – damages based on Defendant's civil liability – is not comparable. Moreover, *Griswold* and *Wade* concern one's "interest in independence in making certain kinds of important decisions," such as "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Whalen v. Roe*, 429 U.S. 589 at 599, 599 n.26 (1977) (internal quotation marks omitted). These activities – and the standards that govern a state's regulation of them – are "very different" from claims regarding disclosure of private information. *Paul v. Davis*, 424 U.S. 693, 713 (1976).

Defendant, rather than moving to dismiss on the ground that Plaintiffs have failed to state a claim on which relief can be granted by failing to invoke Section 1983, instead argues the claim on the merits – specifically, that Plaintiffs must proceed under Section 1983 and that Plaintiffs cannot prove the required statutory elements. As such, the undersigned will address the merits of Plaintiffs' constitutional privacy claim as though it were properly brought under Section 1983. The undersigned concludes that Defendant cannot be held liable under Section 1983.

"To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege first, that he or she has been deprived of a right secured by the Constitution and laws of the United States, and second, that the deprivation was by a person acting under color of any statute, ordinance, regulation, custom, or usage, of any State." *Davis Oil Co. v. Mills*, 873 F.2d 774, 779 (5th Cir. 1989) (internal quotation marks omitted). Here, Plaintiffs allege that they have been deprived of their constitutional right to privacy. For purposes of this analysis, the undersigned assumes, without deciding, that

Plaintiffs have adequately alleged a constitutional deprivation.[4] Defendant, a private company acting as an independent contractor with Dallas County, does not contest that the requisite state action is present; as such, the undersigned will assume that this is the case.

Plaintiffs brought this action solely against Cornell and not against any of Cornell's employees or officials. The law is well-established that respondeat superior liability is unavailable in Section 1983 suits. *See, e.g.*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Therefore, Cornell may only be held liable for its own wrongdoing. *See id.* To establish liability for a private corporation performing a governmental function, a plaintiff must prove three elements: (1) the presence of a policy-maker who could be held responsible, through actual or constructive knowledge, for enforcing a policy or custom that caused the claimed injury; (2) that the corporation has an official custom or policy that could subject it to Section 1983 liability; and (3) that the corporate action was taken with the requisite degree of culpability, with a direct causal link between the action and the deprivation of federal rights. *See Olivas v. Corrections Corp.*, 408 F. Supp. 2d 251, 255 (N.D. Tex. 2006), *aff'd* 215 F. App'x 332 (5th Cir. 2007).

In this case, Defendant argues that Plaintiffs have failed to provide any evidence

---

[4] Although Defendant urges the Court to determine that no constitutional right to privacy exists under the circumstances of this case, *see* Dkt. No. 42-1 at 24-27, because Plaintiffs' failure to plead a Section 1983 claim readily disposes of this claim, the Court should its discretion to avoid passing unnecessarily on the constitutional question.

that Defendant followed a policy, custom, or practice permitting the recording of its clients' images. *See* 42-1 at 37. Defendant then cites Plaintiffs' depositions as evidence that it was <u>not</u> customary or a common practice of the treatment center, and therefore of Defendant, to have cameras of any kind in use. *See id.* Indeed, as Defendant points out, Plaintiffs testified in their depositions that they believed the videotaping <u>violated</u> Cornell's policies. *See id.* Finally, Defendant argues that Plaintiffs provide no evidence that Cornell's board of directors knew of or condoned any policy, custom, or practice that damaged Plaintiffs. *See id.*

In response to Defendant's arguments, Plaintiffs fail to cite any evidence that would raise a material issue of fact. Rather, Plaintiffs appear to argue that Cornell's privacy and confidentiality policies <u>were</u> proper, but that its individual employees violated these policies. For example, Plaintiffs assert that "Ms. Myers and Mr. Wilmut were the ones responsible for teaching the new patient arrivals of their rights to be free from invasion of privacy, but instead went against all that they taught and intentionally and knowingly decided to not follow the state, federal, and Cornell rules." Dkt. No. 51 at 22-23 of 30. Thus, Plaintiffs, by their own admission, seek to impose respondeat superior liability on Defendant for the conduct of its employees.

Because respondeat superior liability is not available under Section 1983, and because Plaintiffs' only mechanism to pursue its constitutional claim against Defendant is under Section 1983, Defendant is entitled to summary judgment on this claim.

<u>Common Law Invasion of Privacy Claims</u>

Texas law recognizes three separate torts for invasion of privacy. Plaintiffs claim that Defendant committed a tort for invasion of privacy but do not specify under which tort theory they are proceeding. Defendant argues that Plaintiffs cannot prove <u>any</u> of the available privacy torts.

The three privacy torts recognized under Texas law are: (1) misappropriation of likeness; (2) intrusion on seclusion; and (3) public disclosure of private facts. *See Cain v. Hearst*, 878 S.W.2d 577, 578 (Tex. 1994).

Misappropriation of likeness requires proof of three elements: "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 638 (5th Cir. 2007). "[T]o establish a claim for misappropriation, something unique about the person's name must exist or the tortfeasor must cash in on goodwill associated with the plaintiff's name." *Id.* (internal quotation marks omitted). Moreover, the tort of misappropriation of name or likeness creates property rights only where the failure to do so would result in excessive exploitation of its value. *Id.* Excessive exploitation refers to preventing the value reduction of one's property rights in his name or likeness due to the tortfeasor's use of these. *Id.*

Plaintiffs' bare allegation that "the faces and likenesses of the Plaintiffs were

videoed without the prior written consent of Plaintiffs," Dkt. No. 1-1 at ¶ 23, without more, is insufficient to state a cause of action for misappropriation of likeness. Nor do Plaintiffs, in their Response, provide any evidence that Defendant appropriated Plaintiffs' likenesses for the value associated therewith or that there was some advantage or benefit to Defendant. As such, Plaintiffs fail to raise a triable issue of fact as to the misappropriation tort.

Intrusion on seclusion requires proof of "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Texas Comptroller of Public Accounts v. Attorney General of Texas*, 354 S.W.3d 336, 364 (Tex. 2010). "The concept of invasion of privacy covers intrusion on a party's seclusion, solitude, or private affairs. Liability does not turn on publication of any kind. The core of the tort of invasion of privacy is the offense of prying into the private domain of another, not the publicity that may result from such prying." *Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex. App. – Texarkana 2001, pet. denied) (internal citations omitted). Texas courts have generally restricted the intrusion tort to conduct causing some sort of physical invasion of a person's property, such as spying, opening private mail, wire-tapping, or entering a person's residence. *See Doe v. United States*, 83 F. Supp. 2d 833, 840 (S.D. Tex. 2000).

Here, Defendant has provided evidence demonstrating that Plaintiffs were aware that they were being filmed during their participation in Cornell Idol as well as

for the CRB Video, regardless of whether or not Plaintiffs knew the purpose of the filming at the time. *See* Dkt. No. 42 at ¶ 25 (citing to testimony from Plaintiffs' depositions in which Plaintiffs testified that Defendant's employees informed them that they were going to videotape a mock group treatment session); *id.* at ¶ 51 (citing to testimony from Plaintiffs' depositions in which Plaintiffs testified that the participants in Cornell Idol were aware that the shows were being videotaped and shown to other clients within the treatment center). Plaintiffs did not include any evidence in their Response that would raise a genuine question as to whether Plaintiffs were unaware of the filming – such that Defendant could be said to have intruded on Plaintiffs' seclusion, solitude, or private affairs. As such, Plaintiffs have failed to raise a triable issue of fact as to the invasion tort.

Finally, the three essential elements of invasion of privacy by public disclosure of private facts are: (1) publicity was given to matters concerning one's personal life, (2) publication would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized is not of legitimate public concern. See *Indus. Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex.1976). Publicity means that a matter is communicated to the public at large or disseminated to so many people that it becomes public knowledge. *Id.* at 683-84.

Plaintiffs alleged that the CRB Video was shown:

> to numerous groups and individuals to raise money for the treatment program and to obtain future contracts for supervision and operation of other treatment facilities in Texas and locations in other states. Besides

being shown to several Drug Court Judges, it was also shown to members and staff of the Probation Department, and to Commissioner John Wiley Price. Additionally, outside groups and supervisory personnel were also shown the video as well as other patient residents in the facility.... The video was also shown to the workers at the Attitudes & Attire located at the Dallas Appeal Mart who did not have any supervisory contact with the treatment facility but instead donated clothes to women going into the public for job interviews.

Dkt. No. 1-1 at ¶ 13. Plaintiffs do not make any allegations as to publication of the Cornell Idol Footage. *See id.* at ¶¶ 10-11.

Defendant contends that it did not "publicize" any information about Plaintiffs because it "did not make either the CRB Video or Cornell Idol Footage available to more than a small group of persons, all of whom are affiliated with the Wilmer Treatment Center either in the provision of services or referrals or as clients." Dkt. No. 42-1 at 42. As evidence that it did not publicize the disclosure, Defendant relies on several Plaintiffs' deposition testimony as well as the minutes of the CRB meeting at which the CRB Video was shown. *See id.* Defendant asserts that Plaintiffs offer no admissible evidence to support their allegation that Cornell showed videotaped material to individuals associated with Attitudes and Attire. *See id.* at 28-29 n.8. Defendant also acknowledges that two plaintiffs, Gardner and Graham, testified that they had seen portions of the Cornell Idol Footage on YouTube, but Defendant notes that both testified that they did not know how the video clips got posted to the internet or who had posted them. *See id.* at 29 n.9; Dkt. No. 43 at 256, 258, 303.

In response, Plaintiffs offered no admissible evidence that Defendant showed the

CRB Video, the Cornell Idol Footage, or any other material containing Plaintiffs' likenesses to anyone. Plaintiffs cite to Plaintiff Kelly Armstrong's interrogatory answer, in which Ms. Armstrong states: "I also heard from Ms. McCall said that one of the videos was on You Tube." Dkt. No. 51 at 20 of 30. Ms. Armstrong's hearsay testimony is inadmissible and therefore inappropriate for consideration on a summary-judgment motion.[5] *See Mersch v. City of Dallas*, 207 F.3d 732, 734-35 (5th Cir. 2000) (noting that "Rule 56 states that a court may consider only admissible evidence in ruling on a summary judgment motion"). Plaintiffs' Response also states – without citation – that "[t]he invasion of privacy became world-wide when several Plaintiffs and others saw one of the [Cornell] Idol singing contests on the internet web site You Tube." Dkt. No. 51 at 21 of 30.

Because Plaintiffs fail to provide the Court with <u>any</u> evidence that Defendant publicized the private facts of Plaintiffs, the only question remaining is whether Defendant's moving papers themselves demonstrate the existence of a genuine issue of material fact by citing to evidence that two Plaintiffs saw clips of the Cornell Idol Footage on You Tube. *See Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342, 348 (5th Cir. 1958) ("Where, by the nature of things, the moving papers themselves demonstrate that there is inherent in the problem a factual controversy then, while it

---

[5] Plaintiffs provide the Court with no insight as to who Ms. McCall is or if the quoted statement may fall within a hearsay exception. Even if the statement does somehow fall into a hearsay exception, this bare statement is insufficient to raise a genuine issue of material fact.

is certainly the part of prudence for the advocate to file one, a categorical counter-affidavit is not essential."). The undersigned concludes that the fact that two Plaintiffs testified to seeing Cornell Idol Footage on YouTube does not raise a question of material fact. Certain Plaintiffs also testified that they stole copies of the CRB Video and the Cornell Idol Footage from the treatment facility. *See* Dkt. No. 42 at ¶¶ 55, 56 (citing to testimony from Plaintiffs' depositions). Neither of these Plaintiffs testified that Defendant was responsible for posting the Cornell Idol Footage, and, in their Response, Plaintiffs do not even assert, much less offer evidence, that Defendant posted the footage to YouTube. *See* Dkt. No. 51 at ¶ 34. Nor do Plaintiffs argue, pursuant to FED. R. CIV. P. 56(d), that such evidence is currently unavailable to them but that Plaintiffs could obtain such evidence with additional time. Finally, Plaintiffs did not allege in the Original Petition any facts relating to the purported YouTube posting. *See, e.g.*, *De Fanceschi*, 477 F. App'x at 204.

Because no genuine issue of material fact exists as to whether Defendant publicized Plaintiffs' private information, Defendant is entitled to summary judgment on the disclosure privacy tort theory.

## Recommendation

The undersigned recommends that Defendant's Motion for Summary Judgment [Dkt. No. 42] be granted in its entirety.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: March 15, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE